UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

    JOHN A. METZGER, JR.,                        Case No. 12-30292-dof
                                                                     Chapter 7 Proceeding
              Debtor.                                Hon. Daniel S. Opperman
_____/

AMERICREDIT FINANCIAL SERVICES, INC.,

       Plaintiff,

v.                                                                        Adversary Proceeding
                                                                        Case No. 12-3052-dof

JOHN A. METZGER, JR.,

       Defendant.
_____/

Opinion Granting Plaintiff's Motion for Summary Judgment

Procedural Background

John Metzger ("Defendant") filed his chapter 7 bankruptcy petition on January 25, 2012. On February 16, 2012, Americredit Financial Services, Inc., d/b/a GM Financial ("Plaintiff"), filed this adversary proceeding seeking a determination that the debt owed to it is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6). Defendant timely filed his Answer and Affirmative Defenses. On April 11, 2012, Plaintiff filed its Motion for Summary Judgment and Defendant filed his Response on May 10, 2012. Plaintiff filed a Reply on May 24, 2012.

Background Facts

Defendant visited Genesee Valley Dodge with a Heidi Ann Wilson, f/k/a Heidi Ann Kortas to buy a car. He selected a 2006 Dodge Stratus, but needed to borrow money to acquire the car. On September 19, 2007, Defendant executed a Retail Installment Contract made payable to Huntington National Bank in the principal amount of $13,189.64 to enable him to purchase the Dodge Stratus. The Retail Installment Contract provided, in part, that Defendant would

1

"own the collateral and [would] not sell, transfer, grant a license in, lease or dispose of all or part of the collateral, or allow any lien, encumbrance or security interest other than [Huntington's] to be granted, placed or filed on the collateral or title to the collateral."

On November 13, 2007, Huntington National Bank assigned the loan and its lien on the vehicle to Americredit. Pursuant to the terms of the Retail Installment Contract, Defendant was to make monthly payments in the amount of $273.66, commencing on November 23, 2007 and continuing for 72 months, and interest was to accrue at the annual rate of 14.04%. Defendant granted Plaintiff a first lien and security interest on the vehicle, a 2006 Dodge Stratus.

In November 2007, Defendant defaulted under the terms of the Retail Installment Contract and Plaintiff instituted a lawsuit in the 67-3rd Judicial District Court to recover the balance due on the loan and to recover the vehicle. On April 14, 2008, a judgment was entered against Defendant for $14,496.19. Subsequent to the entry of that judgment, Plaintiff garnished Defendant's wages. The balance owed on the judgment is $8,089.03.

After the institution of the lawsuit in the District Court, Defendant had a conversation with Plaintiff's counsel, in which Defendant indicated that he did not purchase the vehicle for his own use, but that he purchased the vehicle for the use of Ms. Wilson. Defendant claims that Ms. Wilson was present when he purchased the vehicle and that he made it very clear at the time he purchased the vehicle that Ms. Wilson was going to take possession of it. He claims that the dealership and, by agency, Huntington National Bank, were aware that Ms. Wilson was going to possess the vehicle prior to granting the loan to Defendant.

Ms. Wilson is still in possession of the vehicle and neither she nor the vehicle can be located.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334 and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to dischargeability of particular debts).

### Arguments

Plaintiff argues that Defendant made material misrepresentations regarding his intent to make the payments on the loan and regarding who would be in possession of the vehicle in

violation of 11 U.S.C. § 523(a)(2)(A) and it is entitled to summary judgment in its favor. Defendant denies that he made any misrepresentations and that, at the time Plaintiff's predecessor approved the loan, Plaintiff's predecessor in interest was fully aware that Ms. Wilson was going to take possession of the vehicle.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056. Federal Rule of Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

## 11 U.S.C. § 523(a)(2)(A)

Under section 727 of the Bankruptcy Code, a debtor may obtain a general discharge from all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are exceptions for certain obligations, including debts for money obtained by fraud or by use of a false statement in writing. 11 U.S.C. § 523(a)(2)(A) & (B). A discharge under section 727 does not discharge an individual debtor from any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*In re Rembert,* 141 F.3d 277, 280 (6th Cir. 1998). Whether a debtor possessed intent to deceive is measured by a subjective standard. *Id.*

<u>Analysis</u>

The purpose of section 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud. *In re Omegas Group, Inc.*, 16 F.3d 1443, 1451 (6th Cir. 1994). Plaintiff must show each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to debtor. *Rembert,* 141 F.3d at 281.

Plaintiff cites *In re McManus*, 292 B.R. 157 (Bankr. E.D. Mich. 2003) in support of its argument. In that case, the debtor signed a purchase agreement for a vehicle, which obligated her to pay 60 monthly payments of $2,183.69. The debtor in that case confirmed that she signed the contract as a straw-purchaser, that she did not intend to make any payments on the loan, and that she turned over possession of the vehicle to two other individuals in exchange for $500. The Court found that the debtor knew she was signing a contract for a vehicle that she had no intent to own or make loan payments. The Court concluded that the debtor defrauded her lender and that the debt due to the lender was excepted from discharge pursuant to § 523(a)(2)(A).

Plaintiff also cites *In re Russell*, 463 B.R. 464 (Bankr. W.D. Mich. 2012) in support of its argument that an agency relationship cannot be inferred between a dealership and a lender to justify imputing salesperson's knowledge to the lender. In that case, the debtor borrowed $19,934.58 from a lender to fund the purchase of a truck for her father. She admitted at the time she signed the promissory note that she had no intention of paying the lender for the truck because she expected her father to repay the loan. The dealership structured the transaction so that it appeared that the debtor was financing the truck because her father's credit precluded him

from qualifying for the loan in his own name. The content of the loan documents did not reveal the real nature of the transaction. That court stated:

> Although the court does not doubt Ms. Russell's testimony to the effect that the Dealership's salesperson proposed structuring the transaction to hid its true nature, that testimony does not undercut the fact that Ms. Russell herself played a crucial role in persuading the Credit Union to part with the loan proceeds. She provided documentation representing falsely that she intended to repay the debt, when in fact she had no intention.

*Russell*, 463 B.R. at 467. The Russell Court concluded that the debtor misrepresented the transaction and her intent to repay, and that the Credit Union justifiably relied on the representations when it funded the loan and parted with $19,934.58.

Like the defendants in *McManus* and *Russell*, Defendant never intended to have possession of or use the vehicle. Given the timing of Defendant's default on the loan, which was the month he was supposed to make the first payment, no other inference can be made other than that Defendant did not intend to repay the loan. Plaintiff relied on Defendant's credit and income in granting the loan and it is unlikely that Plaintiff would have granted the loan if it had known that Defendant would transfer possession of its collateral to a third party. "[I]t is reasonable to assume that a borrower will be more inclined to make payments in order to keep a vehicle that she is actually using, than to make payments to keep collateral for a third party's benefit." *In re Russell*, 463 B.R. 464 (Bankr. W.D. Mich. 2012).

Debtor's argument that the Dodge Dealership knew at all times that Ms. Wilson would have possession of the vehicle does not vitiate the fact that Defendant made false representations on the loan application regarding his intent to repay and who would have possession of the vehicle. Defendant has not provided any evidence that Huntington National Bank had actual knowledge that Ms. Wilson would be the party in possession of the vehicle.

Here, the record is not developed as to whether Defendant expected that Ms. Wilson would make the monthly loan payments, but it is clear that no payments were ever made on the loan. Defendant defaulted on the loan in the month the first payment was due. Defendant made representations that he would repay the debt and that he would be in possession of the vehicle when he signed the loan paperwork. He admitted that he did not intend to be, and was in fact never, in possession of the vehicle.

5

All of these facts satisfy the elements of a 523(a)(2)(A) action.  Accordingly, Plaintiff's Motion for Summary Judgment is Granted.  Counsel for Plaintiff is directed to prepare the appropriate Order.

.

**Signed on August 16, 2012**

                                                **/s/ Daniel S. Opperman**
                                                **Daniel S. Opperman**
                                                **United States Bankruptcy Judge**